# UNITED STATES DISTRICT COURT
## OF MIDDLE FLORIDA

CASE NO: ___3:12-CV-169-J-37JBT___

NUCORP, LTD.,

     Plaintiff,

v.

JOHN DOE,

     Defendant.

## COMPLAINT

Plaintiff, Nucorp, LTD., sues John Doe, who was, at all relevant times, the subscriber of IP address 98.231.29.221 and alleges:

### Introduction

1.    This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

2.    Defendant copied and distributed most of a website containing 51 movies. This is known as a "siterip." The file containing the subject website is so large that Defendant's computer must have worked collaboratively with other peer infringers' computers through the process described below for numerous weeks or months to effectuate a complete download and redistribution of the subject website.[1]

3.    Throughout this Complaint the word "Works" refers to the 51 movies contained on the subject website.

4.    Through this suit, Plaintiff alleges Defendant is liable for:

- Direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and

---

[1] The hit date is not evidence of when Defendant started the download but is merely evidence of when the investigator's server recorded Defendant's IP address sending a particular piece of data.

ALEXANDER LIAN, P.A.
2 SOUTH BISCAYNE BLVD., PENTHOUSE 3800
MIAMI, FLORIDA 33131

- Contributory copyright infringement.

## Jurisdiction And Venue

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

6.    The Defendant's acts of copyright infringement occurred using Internet Protocol address 98.231.29.221 ("IP address") traced to a physical address located within this District, and therefore pursuant to Florida Statute § 48.193(1)-(2), this Court has personal jurisdiction over Defendant because (a) Defendant committed the tortious conduct alleged in this Complaint in the State of Florida, and (i) Defendant resides in the State of Florida and/or (ii) has engaged in substantial and not isolated business activity in the State of Florida.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) Defendant resides (and therefore can be found) in this District and resides in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

## Parties

8.    Plaintiff is a corporation organized and existing under the laws of Dominica and has its principal place of business located at 8 Copthall, Roseau Valley, 00152, Dominica.

9.    Defendant is known to Plaintiff only by IP address 98.231.29.221.

10.   An IP address is a number that is assigned by an Internet Service Provider (an "ISP") to

devices, such as computers, that are connected to the Internet.

11.    The ISP to which Defendant subscribes, Comcast Cable, can correlate the Defendant's IP address to the Defendant's true identity.

## Factual Background

I.    *Plaintiff Owns the Copyright to the Motion Pictures*

12.    Plaintiff's Works are subject to copyright protection pursuant to 17 U.S.C. §§ 104(b)(1)-(3) because one or more of the authors is a national or domiciliary of a treaty party; the Works were first published in a foreign nation that is a treaty party; and the Works qualify as a sound recording that was first fixed in the territory of a treaty party.

13.    Registering the copyrights is not a condition precedent to bringing this action under 17 U.S.C. § 411 (a) because the subject copyrights are not "United States Work(s)" within the meaning of that statute.  Instead, the Works underlying the copyrights were created and/or published within the territory of a treaty party.

14.    Within the time limits prescribed by 17 U.S.C. § 412, Plaintiff registered 9 of the 51 movies contained on the subject website with the United States Copyright Office. A copy of each of the Registrations is attached as **Composite Exhibit A** along with a list of the titles of the other 42 works.

II.    *Defendants Used BitTorrent To Infringe Plaintiff's Copyright*

15.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data; indeed, it has been estimated that users using the BitTorrent protocol on the internet account for over a quarter of all internet traffic. The creators and user's of BitTorrent developed their own lexicon for use when talking about BitTorrent, which can be found on

www.Wikipedia.org.

16.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

A.    *Defendant Installed a BitTorrent Client Onto His or Her Computer*

17.    Defendant installed a BitTorrent Client onto his or her computer.

18.    A BitTorrent "Client" is a software program that implements the BitTorent protocol. There are numerous such software programs including µTorrent and Vuze, both of which can be directly downloaded from the internet. See www.utorrent.com and http://new.vuze-downloads.com/.

19.    Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

B.    *The Initial Seed, Torrent, Hash and Tracker*

20.    A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

21.    The Client takes the target computer file, the "initial seed," here the subject website containing the copyrighted Works, and divides it into groups of bits known as "pieces."

22.    The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Works, a random and unique alphanumeric identifier known as a "hash" and

records these hash identifiers in the torrent file.

23.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free.  In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

24.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

25.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

26.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Works, on them and facilitates the exchange of data among the computers.

27.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

        C.     *Torrent Sites*

28.     "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites, including www.TorrentZap.com, www.Btscene.com, www.ExtraTorrent.com, and www.piratebay.org.

29.     Upon information and belief, Defendant went to a torrent site to upload and download

Plaintiff's copyrighted Works.

D.    *Uploading and Downloading Works Through a BitTorrent Swarm*

30.    Once the initial seeder has created a torrent and uploaded it onto a torrent site then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Works) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

31.    The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Works, to the peers seeking to download the computer file.

32.    Once a peer, here the Defendant, receives a piece of the computer file, here a piece of the Copyrighted Works, it starts transmitting that piece to the other peers.

33.    In this way, all of the peers and seeders are working together in what is called a "swarm."

34.    Here, Defendant participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

35.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted work to each of the peers.    The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

36.    Once a peer, here a Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie.  Also, once a peer has

downloaded the full file, that peer becomes known as "an additional seed" because it continues to distribute the torrent file, here the copyrighted Work.

E.    Plaintiff's Computer Investigators Identified Defendant's IP Address as a
      *Participants in a Swarm That Was Distributing Plaintiff's Copyrighted Works*

37.   Plaintiff retained IPP, Limited ("IPP") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the internet to reproduce, distribute, display or perform Plaintiffs' copyrighted works.

38.   IPP used forensic software named INTERNATIONAL IPTRACKER v1.2.1 and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions.

39.   IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the file identified         by        the        SHA-1        hash        value        of 7279915A655370BE4DF168F7A166F89BAF203FF2 (the "Unique Hash Number").

40.   The IP addresses, Unique Hash Number and hit dates show Defendant had copied a piece(s) of Plaintiff's copyrighted Works identified by the Unique Hash Number, and was distributing it to other peers in a BitTorrent swarm on:

      a.  September 26, 2011 at 1:11:41 UTC.

41.   Through the transaction(s), the Defendant's computer used its IP address to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

42.    IPP's agent analyzed each BitTorrent "piece" distributed by Defendant verified that re-assemblage of the piece(s) using a BitTorrent Client results in fully playable digital motion pictures of the Works.

43.     IPP's agent viewed the Works side-by-side with the digital media files that correlate to the Unique Hash Numbers and determined that they were identical, strikingly similar or substantially similar.

### Miscellaneous

44.     All conditions precedent to bringing this action have occurred or been waived.

45.     Plaintiff retained counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for its services.

### COUNT I
### Contributory Infringement Against John Doe

46.     The allegations contained in paragraphs 1-45 are hereby re-alleged as if fully set forth herein.

47.     Plaintiff is the owner of the Registrations for the Works, each of which contains an original work of authorship.

48.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied one or more of the constituent elements of the Registered Works that are original.

49.     Plaintiff did not authorize, permit or consent to Defendant's copying of its Works.

50.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

   (A)     Reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

   (B)     Redistribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

   (C)     Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images in any sequence and/or by making the sounds

accompanying the Works audible and transmitting said performance of the Works, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D)     Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Works nonsequentially and transmitting said display of the Works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

51.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

52.     Plaintiff has suffered actual damages that were proximately caused by the Defendant's infringements, including lost sales, price erosion and a diminution of the value of its copyrights.

WHEREFORE, Plaintiff respectfully request that the Court:

(A)     Permanently enjoin Defendant and all other infringers who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted Works;

(B)     Order that Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Works from each of the computers under Defendant's possession, custody or control;

(C)     Order that Defendant delete and permanently remove the copies of the Works Defendant has on the computers under Defendant's possession, custody or

control;

(D)     Award Plaintiff either their actual damages and any additional profits of the Defendant pursuant to 17 U.S.C. § 504-(a)-(b); or statutory damages in the amount of $150,000 pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(E)     Award Plaintiff their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)     Grant Plaintiff any other and further relief this Court deems just and proper.

## COUNT II
### Contributory Infringement Against John Doe

53.     The allegations contained in paragraphs 1-45 are hereby re-alleged as if fully set forth herein.

54.     Plaintiff is the owner of the Registrations for the Works, each of which contains an original work of authorship.

55.     By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendant copied the constituent elements of each of the Works that are original.

56.     By participating in the BitTorrent swarm with other infringers, the Defendant induced, caused or materially contributed to the infringing conduct of the other peer infringers in the swarm.

57.     Plaintiff did not authorize, permit or consent to Defendant's inducing, causing or materially contributing to the infringing conduct of each other peer infringers.

58.     Defendant knew or should have known that other BitTorrent users, here other infringers, would become members of a swarm with Defendant.

59.     Defendant knew or should have known that other BitTorrent users in a swarm with it, here other infringers, were directly infringing Plaintiff's copyrighted Works by copying

one or more of the constituent elements of the copyrighted Work that are original.

60.    Indeed, Defendant directly participated in and therefore materially contributed to each other participants' infringing activities.

61.    Defendant's contributory infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

62.    Plaintiff has suffered actual damages that were proximately caused by Defendant including lost sales, price erosion, and a diminution of the value of its copyrights.

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)    Permanently enjoin Defendant and all other infringers who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted Works;

(B)    Order that Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Works from each of the computers under Defendant's possession, custody or control;

(C)    Order that Defendant delete and permanently remove the copies of the Works Defendant has on the computers under Defendant's possession, custody or control;

(D)    Find that Defendant is jointly and severally liable for the direct infringement of each other infringer that Defendant induced, caused or materially contributed to commit an infringement;

(E)    Award Plaintiff either their actual damages and any additional profits made by Defendant pursuant to 17 U.S.C. § 504-(a)-(b); or statutory damages in the amount of $150,000  pursuant to 17 U.S.C. § 504-(a) and (c), whichever is

greater;

(F)     Award Plaintiff their reasonable attorneys' fees and costs pursuant to 17 U.S.C. §

        505; and

(G)     Grant Plaintiff any other and further relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: **February 17, 2012**

                                        Respectfully submitted,

                                        Alexander Lian, Esq.
                                        Florida Bar No. 571271
                                        ALEXANDER LIAN, P.A.
                                        2 South Biscayne Blvd.
                                        Penthouse 3800
                                        Miami, FL 33131
                                        Telephone: (305) 381-7910
                                        Facsimile: (305) 397-0999
                                        alian@alexanderlian.com
                                        *Attorneys for Plaintiff*

# EXHIBITS

# FILED  SEPARATELY

# NOT SCANNED